**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1542

ALETHIA LEE MCCORMICK, Administrator for the Estate of Alvin Moore,

    Plaintiff - Appellant,

    v.

AMERICA ONLINE, INC.,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:16-cv-01561-GBL-MSN)

Argued: September 27, 2018          Decided: November 29, 2018

Before NIEMEYER, KING, and WYNN, Circuit Judges.

Vacated and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Wynn joined.

**ARGUED:** Stephen J. van Stempvoort, MILLER JOHNSON, Grand Rapids, Michigan, for Appellant. Michael W. Stark, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee. **ON BRIEF:** Tennille J. Checkovich, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

This case presents the question of how subject-matter jurisdiction over a motion to vacate or modify an arbitration award under § 10 or § 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11, is to be determined. The Federal Arbitration Act, which provides for the enforceability of arbitration agreements and specifies procedures for conducting arbitrations and enforcing arbitration awards, does not itself provide an independent jurisdictional basis for disputes under the Act. And while the Supreme Court in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), held that jurisdiction over a § 4 petition to compel arbitration is determined by the nature of the underlying dispute, the statutory language on which the Court relied to reach that conclusion is absent from § 10 and § 11. Moreover, there is a split of authority among the courts of appeals regarding how such jurisdiction over § 10 and § 11 motions is to be determined.

We conclude that the better reasoned approach for determining subject-matter jurisdiction over § 10 and § 11 motions is to look to the nature of the underlying claim in dispute, just as is done with respect to § 4 petitions to compel arbitration. Thus, if the underlying claim is one that otherwise could be litigated in federal court, the § 10 or § 11 motion can likewise be resolved in federal court.

In this case, the plaintiff, who arbitrated a claim that arose under a federal statute, sought to vacate or modify the arbitration award by filing a motion in the district court under §§ 10 and 11 of the FAA, and for jurisdiction, he invoked both 28 U.S.C. § 1331 (federal-question jurisdiction) and § 1332 (diversity jurisdiction). The district court dismissed the proceeding because the plaintiff was unable to demonstrate the

jurisdictional amount for diversity jurisdiction. It did not address the plaintiff's invocation of federal-question jurisdiction. Applying the approach we adopt herein, we conclude that the district court had federal-question jurisdiction under 28 U.S.C. § 1331 because the plaintiff's underlying claim arose under federal law. We thus vacate the district court's order of dismissal and remand for resolution of the plaintiff's motion.

I

In October 2014, the Statesboro Police Department in Statesboro, Georgia, reported to America Online, Inc. ("AOL"),[1] an online service provider, that it was "investigating an emergency involving danger of death or serious physical injury that requires disclosure without delay of the following records relating to the emergency." It referred to a threatening email that was sent from the address "mooreal77@aol.com" and requested "data information" for the month of October 2014, as well as "subscriber information" for that account. After AOL complied with the Police Department's request, Alvin Moore, the subscriber for that address, complained to AOL that it had violated its privacy policy, as well as Title II of the Electronic Communications Privacy Act of 1986 (known as the Stored Communications Act), 18 U.S.C. § 2701 *et seq.*, by providing information about him without a warrant, a subpoena, or his consent. Moore also complained that AOL had, without his consent, deleted all his emails, causing him damages, for which he requested a settlement of $74,999. AOL denied Moore's claim.

---

[1] The corporation's name was later changed to AOL Inc., and then to Oath, Inc. For convenience, we will refer to the corporation as AOL.

Under the terms of AOL's service agreement, by which Moore agreed to "binding arbitration" of "[a]ll disputes between [Moore] and AOL," Moore sought and obtained arbitration of his claim under the auspices of the American Arbitration Association. By an award dated October 3, 2016, the arbitrator denied Moore's claims "in their entirety."

Proceeding *pro se*, Moore then filed a motion in the district court, requesting that the arbitration award "be vacated or nullified" under §§ 10 and 11 of the FAA. In his motion, Moore alleged that the arbitrator was "completely biased" against him, improperly excluded evidence, prejudged his claim, and committed various other errors. He also alleged that upon vacation of the award, his damages would exceed $75,000. For subject-matter jurisdiction over the motion, Moore relied on, among other provisions, the Stored Communications Act, 18 U.S.C. § 2707(a)–(c), 28 U.S.C. § 1331 (federal-question jurisdiction), and 28 U.S.C. § 1332 (diversity jurisdiction).

The district court reviewed Moore's motion under 28 U.S.C. § 1915 (regulating *in forma pauperis* proceedings) and, *sua sponte*, dismissed it under § 1915(e) (authorizing dismissal if the case is "frivolous or malicious" or "fails to state a claim on which relief may be granted"). Recognizing that "the FAA required independent subject matter jurisdiction," the court concluded that Moore failed to demonstrate diversity jurisdiction under 28 U.S.C. § 1332 because the damage claim he had presented to the arbitrator was $74,999 and thus did not exceed $75,000, as required by § 1332(a). The court did not address Moore's invocation of federal-question jurisdiction.

From the district court's order of dismissal dated March 29, 2017, Moore filed this appeal, contending that the district court erred in concluding that it did not have subject-

matter jurisdiction because (1) his underlying claim arose under the Stored Communications Act and thus was properly the subject of the court's federal-question jurisdiction, and (2) in any event, damages on his claim, as alleged in his motion, exceeded $75,000, thus satisfying the jurisdictional amount for diversity jurisdiction.[2]

II

The FAA was enacted in 1925 to eliminate judicial resistance to arbitration agreements and to provide procedural mechanisms for the enforcement of contracts providing for arbitration. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995). The Act accordingly provides that arbitration contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And, elevating arbitration as a meaningful alternative to litigation, the Act directs courts to order arbitration where contractually required and to stay court proceedings until the arbitration is completed. *See id*. §§ 3, 4. The Act also authorizes courts to review arbitration awards on a very limited basis, thereby affording substantial deference to the awards. *See id*. §§ 9–11. Addressing arbitration procedures, the Act gives arbitrators the authority to summon witnesses and documents, and provides mechanisms for the enforcement of those procedures in court. *See id*. § 7. Finally, the Act provides that arbitration awards may be enforced as judgments of the court when they are filed with the court. *See id*. §§ 9, 13. In short, the

---

[2] Following his notice of appeal, Moore died, and Alethia Lee McCormick, as the Administrator of Moore's estate, was substituted as appellant.

FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Congress enacted the FAA under its Commerce Clause authority and maritime law. *See* 9 U.S.C. § 2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967). But the Act does not create federal jurisdiction for litigation of arbitration controversies, requiring instead an "independent jurisdictional basis" for access to federal court. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) (citing *Moses H. Cone*, 460 U.S. at 25 n.32). This statutory omission has been recognized as an "anomaly" that leaves open the question of how subject-matter jurisdiction over such disputes under the FAA is to be determined. *See Vaden*, 556 U.S. at 59 (quoting *Hall St. Assocs.*, 552 U.S. at 581). As the Supreme Court has explained, while the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate" that applies in both state and federal courts, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n.32; *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984), "as for jurisdiction over controversies touching arbitration," the Act "does nothing" — *i.e.*, it does not create any discrete federal-question jurisdiction under 28 U.S.C. § 1331, *Hall St. Assocs.*, 552 U.S. at 581–82.

When the parties to an arbitration agreement are of diverse citizenship and the amount in controversy exceeds $75,000, diversity jurisdiction would authorize a federal court to resolve disputes concerning the arbitration process, regardless of the nature of the underlying dispute. When diversity jurisdiction does not exist, however, and the

underlying dispute arises under federal law, the question of subject-matter jurisdiction becomes more complex. Indeed, the courts of appeals have split in resolving the question. Under one approach, courts have focused on the fact that arbitration is a product of contract and therefore concluded that disputes under the FAA should be treated as contract disputes, which are normally resolved in state courts. *See, e.g.*, *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 94 (6th Cir. 1997) (treating a § 4 petition to compel arbitration as "based simply on an interpretation of the contract to arbitrate" and refusing to "look through" the petition to the federal nature of the underlying dispute); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 267–69 (2d Cir. 1996) (same); *Prudential-Bache Sec., Inc. v. Fitch*, 966 F.2d 981, 986–89 (5th Cir. 1992) (same). And under another approach, courts have focused on the nature of the underlying dispute, concluding that jurisdiction should be determined by whether the court would have jurisdiction over the dispute but for the arbitration agreement. *See, e.g.*, *Cmty. State Bank v. Strong*, 485 F.3d 597, 603–06 (11th Cir. 2007); *Discover Bank v. Vaden*, 396 F.3d 366, 369, 373 (4th Cir. 2005), *rev'd on other grounds*, *Vaden v. Discover Bank*, 556 U.S. 49 (2009).

The Supreme Court partially weighed in on this split of authority in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). The Court there held that, in determining whether federal-question jurisdiction exists over a petition to compel arbitration under § 4 of the FAA, the court should "look through" the § 4 petition to the underlying dispute and determine whether that dispute arises under federal law. *Id*. at 62–65. The Court reasoned that "when the parties' underlying dispute arises under federal law, the 'look

7

through' approach permits a § 4 petitioner to ask a federal court to compel arbitration without first taking the formal step of initiating . . . a federal-question suit — that is, without seeking federal adjudication of the very questions it wants to arbitrate rather than litigate." *Id*. at 65. In reaching its conclusion, the Court relied on § 4's language authorizing the filing of a petition to compel arbitration in "any United States district court which, *save for such agreement*, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4 (emphasis added); *Vaden*, 556 U.S. at 62. Thus, the Court rejected the position taken by several courts of appeals that since a motion to compel arbitration was "essentially a plea for specific performance of an agreement to arbitrate," it presented a contractual question generally to be decided in state courts. *Vaden*, 556 U.S. at 63. In short, the Court held that "a party seeking to compel arbitration may gain a federal court's assistance" if the underlying controversy "could be litigated in federal court." *Id*. at 66. And because the underlying controversy in *Vaden* was a garden-variety debt collection action that was "not amenable to federal-court adjudication," the Court directed that the petition to compel arbitration filed in federal court be dismissed. *Id*.

Following *Vaden*, some courts have held that because *Vaden* applied the "look through" approach to § 4 petitions largely based on the unique "save for" language in § 4's text, the "look through" approach should not apply to motions to confirm, modify, or vacate arbitration awards under §§ 9–11 of the FAA, as those sections do not contain the "save for" language. *See Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 252–

55 (3d Cir. 2016); *Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 287–89 (7th Cir. 2016). Other courts, however, have reasoned that the difference in language is not dispositive and have held that the "look through" approach should apply to §§ 9–11 motions. *See Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 42–47 (1st Cir. 2017); *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 381–88 (2d Cir. 2016).

After assessing these differing approaches, we conclude that if the district court would have jurisdiction over a § 4 petition, were one to be filed, it has jurisdiction over § 10 and § 11 motions, even if a § 4 petition has not been filed. This conclusion takes the FAA as establishing a comprehensive procedural alternative to litigation such that if a district court would have jurisdiction to litigate the dispute, it would likewise have jurisdiction to compel and supervise arbitration of the dispute. Not only does our holding take the FAA as an integrated whole, rather than a collection of independent mechanisms, it also gives effect to the FAA's purpose of favoring arbitration over litigation when arbitration has been agreed to.

The FAA makes § 4 a procedural gate to arbitration, directing courts to compel arbitration if agreed to in writing, and it prescribes the basis of jurisdiction over a § 4 petition, instructing that jurisdiction over such a petition follow the jurisdictional basis for litigating the underlying dispute. *See Vaden*, 556 U.S. at 62–63. Thus, when the underlying dispute can be litigated in federal court, the federal court has jurisdiction over the § 4 petition to compel arbitration. It follows that if the federal court has jurisdiction to compel the arbitration, it also has jurisdiction to compel the attendance of witnesses at the arbitration under § 7, despite the lack of any "save for" language in that section. And

9

the same conclusion can be reached for jurisdiction over motions to review arbitration awards under §§ 10 and 11.  There is no indication that Congress intended to allow a *federal* court to compel arbitration under § 4 on the basis that the underlying claim arose under federal law and then to require the parties to go to *state* court to review the arbitration's procedures or to enforce its awards.  Indeed, subscribing to such a reading would suggest that § 4 expands federal jurisdiction, a proposition that has been rejected by the Supreme Court.  *See Vaden*, 556 U.S. at 59; *see also id*. at 79 (Roberts, C.J., concurring in part and dissenting in part).

The FAA as a whole creates a procedural mechanism that provides an alternative to litigation, and § 4, as *Vaden* held, indicates that petitions to compel arbitration may be resolved in the same court that could adjudicate the case in the absence of an arbitration agreement.  In our view, it would be surplusage to include in each section of the FAA language specifying jurisdiction over each motion filed subsequent to a § 4 petition.  And indeed, the Supreme Court has suggested as such, noting that "where the court has authority under the [FAA] . . . to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, ultra vires, or other defect."  *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76 (1932).  In other words, the court that has jurisdiction to compel arbitration under § 4 also has jurisdiction to supervise the arbitration's procedures and to confirm, vacate, modify, and enforce the resulting arbitration award.

This "look through" approach should apply to § 10 and § 11 motions regardless of whether a § 4 petition has first been filed.  To require the parties to take the formal step of

10

going to court to compel arbitration on penalty of losing the benefit of § 4's otherwise applicable provision of jurisdiction would make no sense and would undermine the benefit of arbitration as a more efficient process for the resolution of disputes. The language of §§ 10 and 11 does not require the unnecessary procedural step of first obtaining a § 4 order, and the absence of such an order does not change the nature of a § 10 or § 11 motion or otherwise affect the parties' claims in any way.

Thus, while *Vaden* held only that jurisdiction over § 4 petitions to compel arbitration is governed by the jurisdictional rules applicable to the underlying dispute and did not address the precise issue before us, we conclude that jurisdiction over motions under §§ 10 and 11 should likewise be governed by the jurisdictional rules applicable to the underlying dispute. While it is true that § 4 petitions and other FAA motions are part of a process that is contract-based, they function as a comprehensive procedural mechanism, working together to provide an alternative reticulated process to litigation. And as an alternative process, the FAA is appropriately applied by the same courts that otherwise would have jurisdiction over litigation of the underlying dispute.

Indeed, we can think of nothing to suggest that the questions raised in a typical § 4 petition are more appropriate for a federal forum than those raised in a typical § 10 or § 11 motion. When considering § 4 petitions to compel arbitration, courts primarily resolve issues of state contract law such as whether the arbitration provision covers the relevant dispute or whether the contract itself is valid. *See Vaden*, 556 U.S. at 63. Similarly, motions under § 10 or § 11 raise issues of state contract law, such as the scope of the arbitrator's authority. While some courts have reasoned that the FAA's policy of

11

enforcing valid agreements to arbitrate suggests that the federal interest in compelling arbitration under § 4 is greater than the federal interest in confirming, vacating, or modifying awards under §§ 9–11, *see Goldman*, 834 F.3d at 254, we do not agree. The issues addressed by § 4 and §§ 9–11 are completely intertwined in carrying out Congress's decision to provide a set of federal rules governing the arbitration process. Privileging § 4 petitions over § 10 and § 11 motions for jurisdictional purposes thus reflects too narrow a view of the FAA's comprehensive role with respect to arbitration.

Finally, our holding has the added virtue of applying a uniform jurisdictional approach to the FAA as an integrated whole. In this vein, the Supreme Court has rejected interpretations of the FAA that result in "needless tension" between the Act's pre-award and post-award provisions. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 201 (2000). Applying the "look through" approach to § 4 but not to § 10 or § 11 would create just such a tension by subjecting the Act's pre-award and post-award remedies to different jurisdictional inquiries, potentially by different courts, during different stages of the same arbitration.

Indeed, were the "look through" approach not applied uniformly, "curious practical consequences" would result, similar to those identified in *Vaden*. *See Vaden*, 556 U.S. at 65. Particularly, if we were not to "look through" § 10 or § 11 motions when the underlying dispute arises under federal law, we would in effect be requiring parties to go through the superfluous step of first filing a § 4 petition in the district court simply to secure jurisdiction over later motions filed under § 10 or § 11. *See Marine Transit Corp.*, 284 U.S. at 275–76. Under this artificial construct, parties would file § 4 petitions even if

12

they agreed to the propriety of arbitration. Moreover, if we refused to "look through" a § 10 or § 11 motion, we would similarly be encouraging plaintiffs to file first a federal question lawsuit and a § 3 motion to stay that lawsuit pending arbitration, which again are unnecessary procedural steps when the parties agreed to the propriety of arbitration. The formal step of initiating a federal-question lawsuit in order to secure the benefit of a "look through" approach for § 10 or § 11 motions would undermine the efficiency sought to be achieved by the FAA. *See Vaden*, 556 U.S. at 64–65; *Doscher*, 832 F.3d at 387 (discussing how a refusal to look through § 10 motions would "encourage[] the protective filing of federal suits").

In this case, Moore's underlying claim arises out of alleged violations of the Stored Communications Act, a federal statute. Because his claim could, absent the arbitration agreement, be litigated in federal court under its federal-question jurisdiction, controversies regarding the arbitration of his claim — particularly his motion filed under §§ 10 and 11 of the FAA — should likewise be resolved in federal court. In reaching this conclusion, we join in the reasoning of the First and Second Circuits, which have applied the same "look through" approach. *See Ortiz-Espinosa*, 852 F.3d at 42–47; *Doscher*, 832 F.3d at 381–88. *But see Goldman*, 834 F.3d at 252–55; *Magruder*, 818 F.3d at 287–89.[3]

Accordingly, we vacate the district court's § 1915(e) order of dismissal that was based on a lack of subject-matter jurisdiction and remand to allow the district court to

---

[3] Because we conclude that the district court has federal-question jurisdiction in this case, we do not reach the question of whether the district court has diversity jurisdiction and the corollary question of how to determine the jurisdictional amount for Moore's motion to vacate or modify the arbitration award.

13

resolve Moore's motion under §§ 10 and 11.  AOL urges us to decide the merits of that motion on appeal, arguing that it fails to state a claim on which relief can be granted, but AOL has not yet presented its arguments to the district court, and the district court has not addressed them.  Because considering Rule 12(b)(6)-type arguments is committed in the first instance to district courts, we decline AOL's invitation to adjudicate Moore's motion in the first instance.

VACATED AND REMANDED